UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

INGRID GORDON-PATTERSON,

                Petitioner,

      v.

BEDFORD HILLS CORRECTIONAL
FACILITY,

                Respondent.

**MEMORANDUM & ORDER**
21-CV-4307 (HG)

**HECTOR GONZALEZ**, United States District Judge:

      Petitioner Ingrid Gordon-Patterson, formerly incarcerated at Bedford Hills Correctional

Facility, a New York State prison, petitions this Court *pro se* for a writ of habeas corpus,

pursuant to 28 U.S.C. § 2254.  ECF No. 1.  For the reasons set forth below, the Court denies the

Petition because Petitioner's claims are in part unexhausted, in part procedurally barred, and are

otherwise meritless.

## BACKGROUND

      On June 29, 2015, Petitioner was convicted after a 24-day jury trial of two counts of

conspiracy, one count of criminal possession of a weapon, and two counts of criminal sale of a

prescription for a controlled substance.  Tr. at 3555:5–17 (Trial Tr.).[1]  On August 25, 2015,

Petitioner was sentenced to:  (i) as to the two conspiracy counts, concurrent terms of five to

fifteen years and one and one-third to four years of incarceration, respectively; (ii) as to the

weapons possession count, one year of incarceration; (iii) as to each of the two prescription sale

---

[1]     The Court cites to pages assigned by the Electronic Case Files System ("ECF") except in the case of trial transcripts.  For trial transcripts, the Court cites to the original transcript pages and line numbers.

counts, two years of incarceration with two years of post-release supervision to run consecutive to the sentences imposed for the conspiracy convictions. Sent'g Tr. at 20:9–21:8. As a result, Petitioner received a total carceral sentence of nine to fifteen years. *Id*. Petitioner was released from imprisonment on June 21, 2022, and was discharged from parole on November 24, 2023.[2]

Petitioner subsequently filed a notice of appeal from the judgment of conviction contending that: (i) her convictions for conspiracy should be reversed;[3] (ii) she was denied her due process right to a fair trial because prejudicial and irrelevant testimony was offered at trial; (iii) she was denied her right to a fair trial because of ineffective assistance of counsel; (iv) her convictions for criminal sale of prescriptions were against the weight of the evidence and should therefore be reversed; (v) her right to a fair trial was denied when the court failed to conduct a "probing and tactful inquiry" of jurors after a juror was discharged; (vi) the trial court did not properly instruct the jury about the fourth-degree conspiracy charge; (vii) reversal of her convictions was warranted in the interest of justice; and (viii) her sentence was harsh and excessive given her history. *See* ECF No. 12-2 at 45–135 (Pet'r Br. to N.Y. App. Div.); ECF No. 23 at 3 (Pet'r Reply). On March 20, 2019, the Appellate Division rejected these arguments and affirmed her conviction, except that it held that many of her arguments related to alleged

---

[2]    *See* N.Y. State Dep't of Corr. & Cmty. Supervision, Prisoner Lookup https://nysdoccslookup.doccs.ny.gov; Parolee Lookup https://publicapps.doccs.ny.gov/ParoleeLookup/default (last visited July 28, 2025).

[3]    Petitioner argued in her brief to the New York Appellate Division that her convictions of conspiracy should be reversed because: her conviction for conspiracy in the second degree was "both against the weight of the evidence and legally insufficient since the People failed to prove that she agreed to possess four or more ounces of Oxycodone"; her "conviction for [conspiracy related to] criminal sale of a prescription in the fourth degree must be reversed since it was obtained in violation of the double jeopardy provisions of the U.S. and New York State constitutions"; and "the People failed to prove the necessary elements of conspiracy." ECF No. 12-3 at 48.

ineffective assistance of counsel were based on information extrinsic to the trial record, and should be made in a motion to vacate.  *See People v. Gordon-Patterson*, 94 N.Y.S.3d 614, 615 (N.Y. App. Div. 2019).  On June 28, 2019, the New York Court of Appeals denied Petitioner leave to appeal.  *People v. Gordon-Patterson*, 129 N.E.3d 360 (N.Y. 2019).  On November 19, 2019, Petitioner filed a motion to vacate her conviction, pursuant to Section 440 of New York's Criminal Procedure Law ("CPL"), *see* ECF No. 12-3 at 1–16 (Pet'r § 440 Mot.). That motion was denied, in large part because, in the words of the trial court, Petitioner "offer[ed] no non-record based facts to support the ineffectiveness claim." S*ee id.* at 277–78 (CPL § 440 Decision).

On July 26, 2021, Petitioner timely filed the instant Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  *See* ECF No. 1.  Respondent submitted an opposition on March 3, 2022, *see* ECF No. 12-1, and on November 29, 2022, Petitioner filed a reply, *see* ECF No. 23.

## LEGAL STANDARD

### A.    *Deferential Standard of Review*

Federal courts apply the standard of review set forth in Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), to determine whether a petitioner in state custody is entitled to a writ of habeas corpus.  That provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law only if "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court" or "when presented with facts that are materially indistinguishable from a relevant Supreme Court precedent," the state court arrived at a different result. *Evans v. Fischer*, 712 F.3d 125, 132 (2d Cir. 2013).[4]  The writ may also be granted if a state court decision is an "unreasonable application" of clearly established federal law, meaning "the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the [petitioner's] case." *Musaid v. Kirkpatrick*, 114 F.4th 90, 107 (2d Cir. 2024).

Apart from a state court's adjudication of a claim that was an unreasonable or contrary application of federal law, a district court may grant the writ when the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  However, the state court's determination of the facts is presumed to be correct, *see Musaid*, 114 F.4th at 108, and the petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence," 28 U.S.C. § 2254(e)(1).  Nor may a federal court characterize a state court's decisions as unreasonable "merely because [it] would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  Rather, state court decisions should be given "the benefit of the doubt." *Renico v. Lett,* 559 U.S. 766, 773 (2010).

---

[4]     Unless otherwise indicated, when quoting cases and the parties' papers, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

B.    *Exhaustion Requirement and Procedural Default*

A district court shall only review a writ of habeas corpus if "the applicant has exhausted the remedies available in the courts of the State," 28 U.S.C. § 2254(b)(1)(A), giving the State the "opportunity to correct alleged violations" of federal rights. *Duncan v. Henry,* 513 U.S. 364, 365 (1995). The Second Circuit has adopted a "two-stage inquiry for determining whether the requisite exhaustion has occurred." *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981).

First, the petitioner must have fairly presented her "federal constitutional claim to an appropriate state court." *Id*. "A federal habeas petitioner may fairly present to the state courts the constitutional nature of h[er] claim, even without citing chapter and verse of the Constitution by stating h[er] constitutional claim clearly enough so that a court can easily discern its basis." *Christopher v. Connolly*, No. 06-cv-1575, 2013 WL 1290810, at *7 (E.D.N.Y. Mar. 28, 2013). However, the state court claim must have raised the same "factual and legal premises as the federally asserted claim" and "have been presented in a way that was likely to alert the state court to the claim's federal nature." *O'Neal v. New York*, 465 F.Supp.3d 206, 214 (E.D.N.Y. 2020).

Second, after "having presented h[er] federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure appellate review of the denial of that claim." *Klein*, 667 F.2d at 282. "Although a petitioner need not petition the United States Supreme Court by writ of certiorari, the state [petitioner] must fairly present h[er] federal constitutional claims to the highest state court having jurisdiction over them." *O'Neal v. New York*, 465 F. Supp. 3d 206, 214–15 (E.D.N.Y. 2020). "Specifically, petitioner must have set forth in state court all of the essential factual allegations asserted in h[er] federal petition; if material factual allegations were omitted, the state

5

court has not had a fair opportunity to rule on the claim." *Id.* at 215; *see also Daye*, 696 F.2d at 192 ("The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court."). "[H]aving presented [her] federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must" either utilize "all available mechanisms to secure appellate review of the denial of that claim," or "utilize available state remedies for collateral attack of h[er] conviction in order to satisfy the exhaustion requirement." *Klein*, 667 F.2d at 282.

Finally, "[a] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 582 U.S. 521, 527 (2017). To be independent of the federal question, "it must be clear from the face of the opinion that the state court's decision rested on a state procedural bar." *Garner v. Lee*, 908 F.3d 845, 859 (2d Cir. 2018). "A state procedural bar is adequate if it is firmly established and regularly followed by the state in question' in the specific circumstances presented in the instant case." *Murden v. Artuz*, 497 F.3d 178, 192 (2d Cir. 2007).

### C.    *Pro Se Petitioner Consideration*

Petitioner is proceeding *pro se.* As such, her pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Nonetheless, a *pro se* litigant is not exempt from compliance with relevant rules of procedural and substantive law." *Gutierrez v. Capra*, No. 14-cv-6887, 2019 WL 1508454, at *7 (E.D.N.Y. Apr. 5, 2019).

6

## **DISCUSSION**

In the instant proceeding, Petitioner is challenging her conviction by asserting constitutional violations under the Fifth, Sixth, and Fourteenth Amendments in four claims: (i) she was deprived of a fair trial because prejudicial evidence and hearsay testimony were introduced; (ii) she was denied effective assistance of counsel during the trial and sentencing phases of her case; (iii) she was denied the right to an impartial jury; and (iv) she was denied due process because the prosecution failed to provide possibly exculpatory evidence.  *See* ECF No. 1 at 5–15.  Respondent counters that Petitioner's claims are, in part, procedurally barred or fail to present a cognizable claim and that, in any event, Petitioner's claims are meritless.  *See* ECF No. 12-1 at 17–45.  For the reasons below, the Court finds that Petitioner's claims are in part unexhausted, in part procedurally barred, and are otherwise meritless. Before discussion, though, the Court begins with a brief analysis of its subject-matter jurisdiction.

## I.       **Petitioner's Claim Is Not Moot**

The Court begins, as it must, with subject-matter jurisdiction.  Because Petitioner has been released from prison as well as discharged from parole, the Court must consider whether this case has become moot, which would deprive Petitioner of Article III standing, and thus, this Court of subject-matter jurisdiction.  *See Nowakowski v. New York*, 835 F.3d 210, 218 (2d Cir. 2016); *see also Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) (explaining that mootness is jurisdictional under Article III of the U.S. Constitution).  In a case like this, "involving a challenge to the criminal conviction itself, the Supreme Court has been willing to *presume* the existence of collateral consequences sufficient to satisfy [Article III's] case or controversy requirement; or in a practice that it views as effectively the same, the [Supreme] Court has been willing to count collateral consequences that are remote and unlikely to occur." *See United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999) (emphasis in original).  The

reason for the presumption is that "most criminal convictions do in fact entail adverse collateral legal consequences," such as "being barred from holding certain offices, voting in state elections, and serving as a juror." *Id.* Although the burden is on Petitioner to "identify some continuing collateral consequences that may flow from h[er] criminal conviction," in an "ordinary case" like this one, the Court "may look to the consequences regularly appearing in this context: *e.g.*, future sentence enhancement, impeachment, or civil disabilities." *Nowakowski*, 835 F.3d at 225. Because such consequences are "readily identifiable" here—where Petitioner challenges multiple state felony convictions—her injury is sufficiently "concrete and continuing," *id.* at 217–18, 225, such that this case has not become moot. *See Ash v. Burnett*, No. 23-cv-3930, 2024 WL 3252517, at *5 (S.D.N.Y. June 28, 2024) (challenges to felony convictions by habeas petition are not moot).

## II. Petitioner's Claim That She was Denied a Fair Trial Because the Trial Court Allowed Prejudicial Testimony is Procedurally Barred

Petitioner asserts she was denied her Sixth Amendment right to a fair trial and Fourteenth Amendment right to due process because the trial court improperly admitted prejudicial evidence. *See* ECF No. 1 at 5. Specifically, Petitioner argues that (i) the trial court improperly admitted hearsay testimony which violated her constitutional right to confront witnesses; (ii) the trial court improperly admitted prejudicial testimony regarding uncharged crimes and prior bad acts without a prior hearing; and (iii) the trial court improperly admitted "highly unduly prejudicial testimony." *See id.* The Court finds that these claims are barred pursuant to an independent and adequate state procedural rule because Petitioner defaulted by failing to preserve the issue for state appellate review, and she has not demonstrated any cause for the default.

Where a Petitioner "has defaulted [her] federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 724 (1991). Pursuant to New York's contemporaneous objection rule, *see* CPL § 470.05, to preserve a challenge to a trial court ruling regarding admissibility of trial testimony, the challenging party must register a protest "at the time of such ruling . . . or at any subsequent time when the court had an opportunity of effectively changing the same." N.Y. C.P.L. § 470.05(2). New York's rule "encourages parties to bring issues to the attention of the trial court, preserves judicial resources, and protects the finality of criminal prosecutions." *Sistrunk v. Towns*, No. 24-cv-4054, 2024 WL 5156204, at *3 (S.D.N.Y. Dec. 18, 2024).

Respondent argues that "Petitioner was not denied her right to a fair trial and deference should be given to the state court findings." ECF No. 12-1 at 17. Here, the Appellate Division, citing Section 470.05(2), found that Petitioner's "contention that certain testimony admitted at trial was unduly prejudicial and deprived her of a fair trial is unpreserved for appellate review and, in any event, without merit." *See Gordon-Patterson*, 94 N.Y.S.3d at 615. Although the Appellate Division held that Petitioner's fair trial arguments were both procedurally barred and meritless, "even when a state court states that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted." *See Algarin v. Breslin*, No. 06-cv-3175, 2010 WL 395956, at *2 (E.D.N.Y. Jan. 29, 2010) (citing *Glenn v. Bartlett*, 98 F.3d 721, 725 (2d Cir. 1996)). The state court's "express reliance on the state's

contemporaneous objection rule . . . constitutes an 'independent' state law ground for that decision." *See Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011).

Now, the Court must be satisfied that the specific procedural ground is "adequate, on these facts, to preclude further review of the federal claim." *See id.* To satisfy this inquiry, federal habeas courts look to whether "the state rule at issue . . . is firmly established and regularly followed." *See Clark v. Perez*, 510 F.3d 382, 391 (2d Cir. 2008); *see also Walker v. Martin*, 562 U.S. 307, 316 (2011). The Second Circuit has held that the contemporaneous objection rule "is an independent and adequate state law ground that is firmly established and regularly followed" for the purposes of federal habeas review. *See Liggan v. Senkowski*, 652 F. App'x 41, 43 (2d Cir. 2016); *see also Richardson v. Greene*, 497 F.3d 212, 220 (2d Cir. 2007) ("[A]pplication of the state's preservation rule is adequate——*i.e.*, firmly established and regularly followed."). Accordingly, the Court may not review Petitioner's claims that the trial court's admission of prejudicial testimony denied her constitutional rights to due process and to a fair trial.

### A. Petitioner Has No Cause for Default

After a finding of default based on an adequate and independent state law ground, the burden shifts to Petitioner to prove that there was "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 724. To establish cause for the default, Petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Shinn v. Ramirez*, 596 U.S. 366, 379 (2022). "[A]ttorney error is an objective external factor providing cause for excusing a procedural default" but "only if that error amounted to a deprivation of the constitutional right to counsel." *Davila*, 582 U.S. at 528. Under such circumstances, "[a]n error

10

amounting to constitutionally ineffective assistance is imputed to the State and is therefore external to the [petitioner]." *Id.* However, to show the necessary prejudice, a petitioner "must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *See Garner v. Lee*, 908 F.3d 845, 861–62 (2d Cir. 2018).

Petitioner asserts that ineffective assistance of counsel is the cause for her default. *See* ECF No. 23 at 4. As discussed in Section III below, however, defense counsel was not constitutionally ineffective. Accordingly, no cause or prejudice can be shown, and Petitioner's claim regarding prejudicial trial testimony is procedurally defaulted. *See Dixon v. McGinnis*, 492 F. Supp. 2d 343, 352 (S.D.N.Y. 2007) ("[W]here a petitioner has failed to show cause, the Court need not consider actual prejudice.").

## B. *Petitioner's Innocence Claim is Meritless*

In her reply, Petitioner also makes a claim of innocence. *See* ECF No. 23 at 20. In the context of habeas relief, a claim of actual innocence plays a "procedural, not substantive role." *See Hyman v. Brown*, 927 F.3d 639, 655 (2d Cir. 2019). Even if successful, an innocence claim itself cannot afford a petitioner habeas relief from a state conviction. *See id.* Petitioner's "claim of innocence is offered only to bring her within" the "narrow class of cases implicating a fundamental miscarriage of justice." *See Schlup v. Delo*, 513 U.S. 298, 315 (1995). The "miscarriage of justice exception" is limited to "extraordinary cases, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012). In such rare cases, "an assertion of innocence may allow a petitioner to have h[er] accompanying constitutional claims heard despite a procedural bar." *Id.* A "petitioner's burden in making a gateway showing of actual innocence is

11

deliberately demanding.   It requires, first, that petitioner adduce new reliable evidence . . .that

was not presented at trial.  In addition to being reliable, *i.e.*, credible, the evidence must be

compelling.  This second requirement demands evidence of innocence so strong that a court

cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial

was free of nonharmless constitutional error."  *Hyman*, 927 F.3d at 656–57.

        Here, Petitioner argues that key exculpatory evidence was not presented at trial.  *See* ECF

No. 23 at 20.  Specifically, Petitioner alleges that a wiretapped conversation between Conrad

Minardi and the prosecution's confidential informant, Mark Fasciana, would have "made it clear

that the [P]etitioner had never met [Minardi] and [that] he would've not been able to identify"

Petitioner.  *See id.*  Furthermore, Petitioner argues that this conversation would have proven her

innocence had it been played for the jury.  *See id.*  Minardi did not testify at trial.  *See* ECF

No. 23 at 18–19 (arguing that defense counsel should have requested a missing witness charge

for Minardi).  At trial, Fasciana testified that Minardi helped Fasciana obtain a prescription for

Oxycodone from Petitioner.  *See* Tr. at 2771–75.  This testimony was corroborated by exhibits,

including a prescription for Oxycodone for Fasciana with Petitioner listed as the prescriber.  Tr.

at 2776–77.  Later in his testimony, Fasciana testified that at Petitioner's office, Petitioner wrote

Fasciana another prescription for Oxycodone without any physical examination or testing in

exchange for $250 to $300.  Tr. 2789–92.

        The Court finds that Petitioner has not satisfied the *Schlup* gateway standard.  First,

Petitioner has not supported her innocence claim "with new reliable evidence," instead Petitioner

merely stated that she "can provide a copy of what was given over as initial discovery which

includes the original recording [of the] wiretap conversation."  *See Schlup*, 513 U.S. at 324; *see*

*also* ECF No. 23 at 20.  Second, even assuming the wiretapped conversation shows that Minardi

had never met Petitioner, the Court does not find it "sufficiently credible and compelling . . . to conclude that more likely than not, in light of the new evidence, no reasonable juror would find [P]etitioner guilty beyond a reasonable doubt." *Hyman*, 927 F.3d at 657. Even if the wiretapped conversation showed that Minardi had never met Petitioner, that would not contradict Fasciana's testimony that he received an Oxycodone prescription from Petitioner without any examination and in exchange for cash. Tr. 2789–92. Furthermore, in light of the "totality of the evidence" against Petitioner, including documentary evidence, testimony of co-conspirators, and expert testimony, *see infra* § III.C, the Court cannot conclude that, upon hearing the wiretapped conversation, "no reasonable juror would still find [Petitioner] guilty beyond a reasonable doubt of the charged crimes," s*ee Hyman*, 927 F.3d at 666–670. Thus, Petitioner's innocence claim based on the wiretapped conversation does not "create sufficient doubt about h[er] guilt that [the Court should] permit h[er] to pursue h[er] accompanying constitutional claims notwithstanding an otherwise applicable procedural bar." *Rivas*, 687 F.3d at 541. Accordingly, the Court concludes that Petitioner "has not made the actual innocence showing necessary to pass through the narrow gateway for federal habeas review of h[er] procedurally barred Sixth Amendment claim." *Hyman*, 927 F.3d at 670.

### III.    Petitioner's Ineffective Assistance of Counsel Claim is Partially Unexhausted and, in Any Event, Meritless

Petitioner asserts that she was denied her Sixth Amendment right to a fair trial because of ineffective assistance of counsel. *See* ECF No. 1 at 6–7. Specifically, Petitioner argues her trial counsel (i) was unprepared for trial and seemed confused about legal terms; (ii) was deficient during trial by failing to object and conducting "inept" cross-examinations; (iii) was disbarred following the trial; (iv) failed to object to various jury instructions; (v) failed to object to potential jurors and to use a peremptory challenge to strike a biased juror; and (vi) failed to

object to prejudicial statements made by prosecutors at her sentencing hearing.  *See id*; ECF No. 23 at 3.  Respondent argues that "[P]etitioner has failed to meet her burden to establish that counsel's representation [was] constitutionally deficient" and to the contrary, "that [P]etitioner's trial counsel defended her vigorously."  *See* ECF No. 12-1 at 35.

Petitioner presented many of the ineffective assistance claims to the Appellate Division as well as the trial court through her CPL Section 440 motion.  *See* ECF No. 12-2 at 114–23, 242–50.  Specifically, Petitioner asserted in her direct appeal that "defense counsel engaged in a litany of errors," including failing to object to testimony, conducting "deficient" cross-examination, and that he failed to use a preemptory challenge to strike a "bias[ed]" juror.  *See* ECF No. 12-2 at 114–23.  The Appellate Division found that "it is not evident from the matter appearing on the record that the defendant was deprived of the effective assistance of counsel." *See Gordon-Patterson*, 94 N.Y.S.3d at 616.  Moreover, in its order on the Section 440 motion, the trial court found that "motion counsel offers no non-record-based facts to support the ineffectiveness claim" and that "[t]he failure to allege and substantiate any critical non-record facts in support of defendant's motion is . . . fatal to obtaining the requested relief."  *See* ECF No. 12-3 at 277–78.

Under the standard promulgated in *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner must demonstrate the following elements in order to establish ineffective assistance of counsel:  (1) "counsel's representation fell below an objective standard of reasonableness," *id.* at 688, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  The *Strickland* standard is "highly deferential," *see Bierenbaum v. Graham*, 607 F.3d 36, 50–51 (2d Cir. 2010), particularly when coupled with the Section 2254(d) standard, *see Caballero v. Miller*, No. 24-2602, 2025

14

WL 1013395, at *4 (2d Cir. Apr. 2, 2025) ("[T]he standards created by *Strickland* and § 2254(d) are both highly deferential, when the two apply in tandem, review is doubly so."). "Recognizing the temptation for a defendant to second-guess counsel's assistance after conviction or adverse sentence, . . . counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). Moreover, "when *Strickland* applies 'in tandem' with AEDPA, [the Court's] review of the state court's denial of a petitioner's ineffective-assistance challenge to conviction is 'doubly' deferential, certainly at the first step of the analysis." *Englert v. Lowerre*, 115 F.4th 69, 81–82 (2d Cir. 2024) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)). In this case, the Court finds Petitioner has failed to overcome "*Strickland*'s high bar." *See Harrington*, 562 U.S. at 105.

> A.  *Petitioner's Claims Regarding Counsel's Lack of Trial Preparation and Apparent Confusion about Legal Terms are Meritless*

Petitioner asserts that her trial counsel, Lawrence Etah, "failed to . . . engage in any meaningful pretrial preparation" and claims defense counsel failed to contact witnesses and "investigate the availability of a witness to provide exculpatory information." *See* ECF No. 23 at 20–21. The Petition and reply, however, are wholly devoid of facts substantiating this broad claim. "[A] claim of ineffective assistance of counsel must contain specific factual contentions regarding how counsel was ineffective." *Hernandez v. Artus*, No. 09-cv-5694, 2020 WL 2769404, at *10 (E.D.N.Y. May 28, 2020). The absence of allegations that substantiate how counsel was unprepared is "fatal to an ineffective assistance claim on habeas" review. *See Hall v. Phillips*, No. 04-cv-1514, 2007 WL 2156656, at *13 (E.D.N.Y. July 25, 2007); *see also Jones v. Fischer*, No. 05-cv-24, 2006 WL 2583206, at *7 (E.D.N.Y. Sept. 6, 2006) (rejecting claim of

ineffective assistance of counsel based on allegations that were "vague, conclusory, and unsupported by citation to the record, any affidavit, or any other source").

Here, the record supports the conclusion that defense counsel was well prepared for trial and provided competent representation. Petitioner chose to change counsel during jury selection from a prior attorney to Mr. Etah, and Mr. Etah spoke with Petitioner's prior attorney to learn the details of the case and reviewed discovery supplied by the prosecutor. *See* Tr. at 12–17, 134–36, 1061–69.[5] After that, Mr. Etah participated actively throughout the trial, including through substantial opening and closing statements. *See id.* at 1085–113, 3364–70.

Petitioner further asserts that defense counsel seemed "confused about the basic principle[s] of criminal law." *See* ECF No. 23 at 22. Specifically, Petitioner points to counsel's seeming confusion about the term "counter surveillance" when he cross-examined Sergeant James Cerone. *See id.* The record reflects that defense counsel asked Sergeant Cerone to define the term, and the cross-examination continued without further confusion. *See* Tr. at 3253:15–3254:9. Petitioner also points to counsel's seeming confusion when the prosecution produced "Rosario material" before Detective Troyano took the stand to testify. *See* ECF No. 23 at 22. The material was produced pursuant to *People v. Rosario*, 173 N.E.2d 881 (N.Y. 1961), which

---

[5]     At the outset of jury selection, Petitioner repeatedly requested that her trial counsel be replaced, but the court denied each request, finding the case too old and the timing too late to permit substitution. *See id.* at 2:17–4:4 (noting Petitioner had weeks to retain counsel and characterizing the request as a delay tactic). Following an adjournment to allow Petitioner to consult with her original attorney about a plea offer, original counsel informed the court that he had spoken with the attorney expected to take over and advised him to be present and ready to proceed the next morning. Counsel further noted that the two would speak again that evening to discuss the case. *Id.* at 14:12–20. The next day, Mr. Etah appeared in court and stated he was prepared to continue with jury selection and try the case. *Id.* at 135:6–13. The court allowed the substitution but conditioned it on ensuring continuity: Etah could confer with the prosecutor over lunch and the upcoming long weekend, and original counsel would remain as co-counsel through the morning to facilitate a smooth transition. *Id.* at 136:2–137:13.

requires the prosecution to disclose prior statements of testifying witnesses.  The record reflects that when the prosecution produced the material at issue, defense counsel objected to the introduction of it into evidence; however, when the trial court explained that the material was not being introduced as evidence, there was no further discussion.  *See* Tr. at 2582:12–2583:15.  "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."  *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).  Here, defense counsel's isolated moments of alleged confusion about the way a witness used a particular term or why he was being handed a particular document do not demonstrate that he was ineffective or that he did not understand the purpose of *Rosario* material.  In both cases, counsel sought immediate clarification and continued to competently represent Petitioner.

Moreover, Petitioner fails to demonstrate that she was prejudiced by counsel's alleged lack of preparation and brief confusion.  Where a habeas petitioner "fails to allege, let alone establish, how the result of [her] case would have been different had any of [her] laundry list of shortcomings been corrected, there is no basis for finding that . . . any prejudice resulted from [the attorney's] actions."  *Petrucelli v. United States*, No. 05-cv-9582, 2009 WL 4858081, at *11 (S.D.N.Y. Dec 15, 2009).  Accordingly, Petitioner's claim regarding counsel's lack of preparation does not warrant federal habeas relief.

> B.  *Petitioner's Claims Regarding Trial Counsel's Conduct During Jury Selection Are Procedurally Barred in Part and, in Any Event, Meritless*

Petitioner asserts that defense counsel was deficient because he failed to use a peremptory strike to excuse a "bias[ed]" juror, who indicated she was a registered nurse.  *See* ECF No. 23 at 12.  During *voir dire*, the juror indicated that, given her experience in healthcare and pain management, she might have bias against "anyone who is prescribing medications unlawfully."  *See* Tr. at 495.  Petitioner further asserts that defense counsel failed to request that

the court excuse other jurors, who "expressed an inability to be fair." *See* ECF No. 23 at 12. Specifically, Petitioner points to one juror who said his mother had been mugged, one juror who said he was related to law enforcement officers, and one juror who said she knew a witness from Bible study courses. *See id*.

With respect to defense counsel's failure to use a peremptory strike to excuse the registered nurse from the jury, Petitioner presented this claim to the Appellate Division as well as the trial court through her Section 440 motion. *See* ECF No. 12-2 at 122–23; *see also* ECF No. 12-3 at 4. The Appellate Division found that "it is not evident from the matter appearing on the record that the defendant was deprived of the effective assistance of counsel." *Gordon-Patterson*, 94 N.Y.S.3d at 616. Petitioner has failed to demonstrate that the Appellate Division's findings were erroneous or that defense counsel's conduct prejudiced her.

"States may withhold peremptory challenges altogether without impairing the constitutional guarantee of an impartial jury and a fair trial." *Rivera v. Illinois*, 556 U.S. 148, 152 (2009). Since Petitioner has "no freestanding constitutional right to peremptory strikes," defense counsel's failure to use such a challenge is not federally cognizable under Section 2254 without evidence of prejudice. *See Murray v. Noeth*, 32 F.4th 154, 155–56 (2d Cir. 2022) (citing *Rivera*, 556 U.S. at 157–58).

Furthermore, the record demonstrates that defense counsel was not deficient in making challenges and Petitioner was therefore not prejudiced by his failure to use a peremptory strike. During *voir dire*, the registered nurse initially told the court she "probably" could not put her experiences aside and be fair and impartial. *See* Tr. at 492. However, the juror was subsequently asked whether she could "put aside that bias" and "confidently look at the evidence and follow the judge's . . . instructions," to which she answered "[y]es." *See id*. at 496. In light

of the juror's clear and unequivocal assurance that she could follow the court's instructions, the

trial court denied defense counsel's challenge for cause. *See id*. at 529–31. Given the juror's

confirmation that she could evaluate the evidence presented at trial objectively, defense counsel

could reasonably conclude the juror would be impartial and thus conclude that a peremptory

strike was unnecessary. Such a conclusion was also supported by the "trial judge's

determination of juror impartiality" which "is entitled to a presumption of correctness." *See*

*Swan v. Martuscello*, No. 16-cv-1138, 2018 WL 6179428, at *12 (N.D.N.Y. Nov. 27, 2018).

Since Petitioner has not demonstrated that the outcome of her trial would have been different but

for defense counsel's failure to use a peremptory challenge to strike the juror, Petitioner's claim

does not warrant habeas relief.

Petitioner's claim regarding defense counsel's failure to request that other jurors be

excused is unexhausted because she did not present it to the Appellate Division in the direct

appeal. Moreover, Petitioner's claim is procedurally defaulted because she can no longer raise

the claim in state court.[6] *See St. Helen v. Senkowski*, 374 F.3d 181, 182–83 (2d Cir. 2004)

(finding that petitioner's vagueness claim was procedurally barred because New York's

procedural rules barred him from raising it in New York courts). Therefore, the Court denies this

claim.

---

[6]     Petitioner cannot raise this claim in another direct appeal because "New York law entitles
a Defendant to only one direct appeal, which Petitioner has already exercised." *Lancaster v.
Capra*, No. 20-cv-1678, 2021 WL 1946329, at *7 (E.D.N.Y. May 13, 2021). Furthermore,
Petitioner cannot bring another Section 440 challenge without facing a mandatory denial under
CPL § 440.10(2). CPL § 440.10(2)(c) requires denial of a Section 440 motion if the claim was
record-based and could have been raised on direct appeal but wasn't. *Id.* "Under New York law,
if the petitioner failed to raise a record-based claim on direct appeal in state court, the petitioner
may not then seek collateral relief in New York courts, and the claim is procedurally defaulted."
*Green-Faulkner v. Lowerre*, No. 22-cv-624, 2024 WL 1769316, at *5 (E.D.N.Y. Apr. 24, 2024).

### C.  Petitioner's Claims Regarding Counsel's Deficiency During Trial, Including His Failure to Object and His Cross-Examination of Witnesses, are Meritless

Petitioner asserts that defense counsel was deficient during trial because he failed to object to hearsay testimony and evidence regarding Petitioner's prior bad acts and crimes.  *See* ECF No. 1 at 6–7.  Additionally, Petitioner argues that defense counsel conducted "inept" cross-examination, which resulted in many sustained objections.  *See* ECF No. 23 at 14.  The Second Circuit has "in case after case . . . declined to deem counsel ineffective notwithstanding a course of action (or action) that seems risky, unorthodox or downright ill-advised."  *See Broxmeyer v. United States*, 661 F. App'x 744, 747 (2d Cir. 2016).  Federal habeas relief is warranted only where counsel has committed "[u]nreasonable errors," which "include omissions that cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness."  *See Giordano v. Brann*, No. 22-1639, 2023 WL 7293773, at *2 (2d Cir. 2023).  This Court finds Petitioner has failed to demonstrate that defense counsel's conduct meets this standard.

Counsel's decisions regarding when to object are "virtually unchallengeable" through a claim of ineffective assistance of counsel.  *See United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005) (denying ineffective assistance of counsel claim on direct appeal); *see also Freeman v. Burge*, No. 05-cv-1585, 2009 WL 1468464, at *12 (E.D.N.Y. May 22, 2009) (Counsel's failure to object to hearsay statements "does not rise to the level of constitutionally ineffective assistance of counsel.").  Here, defense counsel's decision not to object to hearsay testimony "may be considered a part of a sound defense strategy."  *See Freeman*, 2009 WL 1468464, at *12.  For example, counsel could have reasonably believed that objections to hearsay by Petitioner's co-conspirators Hollman, Faulk, and Ziegler would have been overruled.  Statements made by co-conspirators in the course and furtherance of the conspiracy are admissible over

20

hearsay or Confrontation Clause objections. *See Haywood v. Portuando*, 288 F. Supp. 2d 446, 470 (S.D.N.Y. 2003) ("[I]t has long been settled under New York law that the declarations of one coconspirator made in the course and furtherance of a conspiracy are admissible against all other coconspirators as an exception to the general rule against hearsay."); *see also Crawford v. Washington*, 541 U.S. 36, 56 (2004) ("[S]tatements in furtherance of a conspiracy" are "by their nature . . . not testimonial."). Moreover, evidence of Petitioner's prior crimes may have been admissible at trial because it was relevant to show Petitioner's intent and plan, not her criminal propensity. *See People v. Bailey*, 32 N.Y.3d 70, 83 (N. Y. 2018) ("[E]vidence of a defendant's prior bad acts may be admissible when it is relevant to a material issue in the case other than defendant's criminal propensity."). "[A]n attorney's decision not to object to a witness's testimony is generally considered a strategic decision that is unchallengeable on habeas review." *May v. Griffin*, No. 17-cv-6319, 2021 WL 5450346, at *18 (S.D.N.Y. Nov. 19, 2021); *see also United States v. Grunberger*, 431 F.2d 1062, 1069 (2d Cir. 1970) (When evidence is offered that counsel knows is admissible, "it is understandable that a defense counsel may wish to avoid underscoring a prejudicial remark in the minds of the jury by drawing attention to it [through an objection].").

Likewise, defense counsel's conduct during cross-examination can reasonably "be considered sound trial strategy falling within the wide range of reasonable professional assistance." *See United States v. Jafari*, 663 F. App'x 18, 22 (2d Cir. 2016). "The decision whether to engage in cross-examination, and if so to what extent and in what manner is generally viewed as a strategic decision left to the sound discretion of trial counsel." *Lavayen v. Duncan*, 311 F. App'x 468, 471 (2d Cir. 2009). Here, defense counsel conducted vigorous cross-examination of the prosecution's witnesses, some of which resulted in sustained objections. *See,*

*e.g.*, Tr. at 2234-2469.  However, Petitioner has failed to demonstrate that the sustained objections reflected anything other than counsel's trial strategy to conduct aggressive cross-examination.

Nonetheless, even if Petitioner could demonstrate that trial counsel's performance was constitutionally defective, Petitioner's claim would still fail because she has not demonstrated prejudice, as required by the second prong of the *Strickland* test.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 691).  In light of the prosecution's overwhelming evidence against Petitioner, the admission of the testimony at issue and the sustained objections did not create a reasonable probability that but for counsel's conduct, the trial verdict would have been different.  The prosecution presented a compelling case with substantial evidence against Petitioner at trial, including:  (1) documentation that Petitioner issued prescriptions to individual patients for hundreds of 30 mg tablets of Oxycodone, the highest dosage available, without determining the patient's previous exposure to opiates or formulating a treatment plan and despite urine tests suggesting that the patients were diverting drugs; (2) testimony by Petitioner's co-conspirators that she knew the tablets were being diverted; and (3) testimony by a doctor who specialized in pain medicine, reviewed the charts of Petitioner's patients, and concluded her services fell below the standard of care.  *See* Tr. at 1787–1810, 2095–2097, 2102–2106.  Given this evidence, this Court concludes that there is no reasonable probability that the verdict at trial would have been different had Petitioner's counsel objected to testimony or conducted cross-examination differently.

22

D. *Petitioner's Claims Regarding Trial Counsel's Failure to Object to Jury Instructions, as well as Counsel's Conduct During Sentencing, are Unexhausted and Procedurally Barred*

Petitioner asserts counsel was ineffective because he failed to request and object to various jury instructions. *See* ECF No. 23 at 24. Petitioner also asserts that during her sentencing hearing, counsel was ineffective because he failed to object to remarks made by the prosecutor regarding the "Medford Killings," which were unrelated to the charges against Petitioner. *See id*. at 26. Since these claims are based solely on the trial court record, Petitioner's failure to present them to the Appellate Division in her direct appeal means that they are unexhausted. *See* 28 U.S.C. § 2254(b)(1)(A) ("[A] writ of habeas corpus . . . shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State."); *see also Klein*, 667 F.2d at 282 (holding petitioner must have fairly presented the "federal constitutional claim to an appropriate state court"). Moreover, these claims are also procedurally defaulted because Petitioner is entitled to only one direct appeal under New York law. *See Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001) ("Petitioner was entitled to one (and only one) appeal to the Appellate Division."). Because Petitioner has already filed an appeal, and the claims regarding ineffective assistance with jury instructions could have been raised in that direct appeal, and were not, the claim is now procedurally defaulted. *See id*.

E. *Petitioner's Claims Regarding Her Trial Counsel's Disbarment are Meritless*

Petitioner offers the disbarment of her trial counsel as evidence of ineffective assistance. *See* ECF No. 23 at 3. Specifically, Petitioner points to the fact that her "appellate attorney was unable to contact" her trial counsel "to discuss his trial strategy." *Id.* Petitioner presented this claim to the trial court through the Section 440 motion. *See* ECF No. 12-3 at 4. The court stated that Petitioner "fail[ed] to state how the disbarment prevented her from speaking to trial counsel"

and therefore denied the motion because Petitioner "offer[ed] no non-record based facts" to support the ineffectiveness claim.  *Id.* at 277.

Petitioner's Sixth Amendment Claim of ineffective assistance "must be judged on the basis of what occurred at the trial of this case, not on the basis of disbarment on unrelated charges."  *See United States v. Mak*, 83-cr-742, 1988 WL 125677 at *11 (S.D.N.Y. Nov. 15, 1988), *aff'd*, 875 F.2d 857 (2d Cir. 1989).  Petitioner's trial counsel was disbarred as a result of his involvement in a domestic violence incident.  *See Matter of Etah*, 103 N.Y.S.3d 607, 609 (N.Y. App. Div. 2019).  Since the incident was "not grounded in any way on events relating to the representation of Petitioner," the mere fact of his disbarment "does not warrant an automatic finding of ineffectiveness."  *See Stallone v. Kopp*, No. 23-cv-7865, 2024 WL 5089550, at *4 n.10 (E.D.N.Y. Dec. 12, 2024).  Moreover, Petitioner has failed to demonstrate that counsel's disbarment prejudiced her during trial.  *See United States v. Eugenio*, 33 Fed. App'x 3, 5 (2d Cir. 2002) ("[G]iven that the disbarment proceedings were unrelated to his prosecution, Eugenio fails to demonstrate how those proceedings caused him prejudice.").  Indeed, Etah's disbarment proceedings make no mention of his performance as an attorney nor reference anything related to Petitioner.  *See generally Matter of Etah*, 103 N.Y.S.3d 607.  Defense counsel's disbarment following his representation of Petitioner therefore does not provide grounds for habeas relief.

### IV.    Petitioner's Claim That She Was Denied the Right to An Impartial Jury is Partially Unexhausted and, in Any Event, Meritless

Petitioner asserts that she was denied her Sixth Amendment right to an impartial jury because (i) three jurors were biased, (ii) the trial court failed to conduct a "probing and tactful inquiry" of Juror #4 before she was discharged during trial, and (iii) the trial court failed to examine other jurors following discharge of Juror #4.  *See ECF No. 23 at 12–13.  Respondent contends that the claim regarding biased jurors is unexhausted and therefore procedurally barred

24

and the claim regarding the alleged failure of the trial court to examine jurors following the discharge of Juror #4 is meritless.  *See* ECF No. 12-1 at 37–40.

> A.  *Petitioner's Claims Regarding Juror Bias are In Part Unexhausted and In Part Procedurally Barred*

Petitioner asserts she was denied the right to an impartial jury because one juror was biased, another juror had a pre-planned vacation, and a third juror had a deadline at her job.  *See* ECF No. 23 at 12–13.  These claims were not presented to the Appellate Division and are therefore unexhausted.  *See* 28 U.S.C. § 2254(b)(1)(A) ("[A] writ of habeas corpus . . . shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State."); *see also Klein*, 667 F.2d at 282 (holding petitioner must have fairly presented the "federal constitutional claim to an appropriate state court"); ECF No. 12-2 at 45–135.

Moreover, Petitioner's failure to raise a Sixth Amendment claim during her first appeal results in a default because "[u]nder New York law, a defendant is permitted only one direct appeal."  *See Beniquez v. Johnson*, No. 21-cv-1467, 2023 WL 3948738, at *13 (S.D.N.Y. June 12, 2023); *see also* NY. Crim. Proc. Law § 440.10(2)(c) (barring review if claim could have been raised on direct review).  Petitioner already made a direct appeal, which was decided on March 20, 2019.  *See Gordon-Patterson*, 94 N.Y.S.3d.  "If a state [petitioner] has failed to exhaust state court remedies with respect to a claim, but no longer has a procedure to raise the claim in state court, the federal courts deem the claims exhausted, but procedurally defaulted."  *Smith v. Johnson*, No. 21-cv-316, 2022 WL 4586305, at *7 (E.D.N.Y. Sept. 29, 2022).  Accordingly, since the impartial jury claim is procedurally defaulted[7], this Court is prevented from reaching the merits of the claim.  *See Coleman*, 501 U.S. at 724.  Additionally, since Petitioner's counsel

---

[7]     Again, although Petitioner could raise an impartial jury claim in a Section 440 motion, it would be denied because her claim is based on facts in the trial record.  *See supra* n.6.

was not constitutionally ineffective for the reasons explained in Section II, and since Petitioner

has identified no other purported cause for the procedural default, she cannot overcome the

procedural bar against her juror bias claims.

> B.  *Petitioner's Sixth Amendment Claim Relating to the Trial Court's Failure to*
> *Examine Jurors Following Dismissal of Juror #4 Lacks Merit*

Petitioner argues she was denied her right to an impartial jury because the trial court

failed to conduct a "probing and tactful inquiry" of Juror #4 and to examine other jurors

following its determination that Juror #4 should be discharged.  *See* ECF No. 23 at 12–13.  Juror

#4, a law student, was dismissed on the eleventh day of the trial after she informed the court that

she was having a hard time being fair and objective because she could not separate the law, as

she had learned it from law school, from the evidence that was being presented in the courtroom.

*See* Tr. at 1638:4–1644:11.

With respect to Petitioner's claim that the trial court should have conducted a "probing

and tactful inquiry" of Juror #4 before determining the juror should be discharged, the Appellate

Division stated that a request for an inquiry was waived because "defense counsel consented to

the discharge of the juror."  *See Gordon-Patterson*, 94 N.Y.S.3d at 615.  Given the Appellate

Division's reliance on this independent and adequate state law procedural basis for denying this

claim on appeal, this claim is procedurally barred from federal habeas review.  *See Terrell v.*

*Kickbush*, No. 17-cv-7027, 2019 WL 3859512, at *5 (E.D.N.Y. Aug. 16, 2019) (Appellate

Division's finding that a claim "is unpreserved for appellate review" procedurally bars the claim

from federal habeas review).

Before being dismissed, Juror #4 admitted to the trial court that she had shared some of

her opinions about the law, based on her legal training, with her fellow jurors even though

deliberations had not yet begun.  *See* Tr. at 1643:22–1644:7.  The Appellate Division did not

address the separate issue of whether the trial court should have, after receiving this information, questioned the other jurors about whether they had been improperly influenced by Juror #4. Since Petitioner raised in her appellate brief the trial court's decision not to "ask any of the remaining jurors what influence juror #4's comments may have had on them," the Court finds that this aspect of Petitioner's claim was presented to the Appellate Division and is, therefore, exhausted and not procedurally barred. *See* ECF No. 12-2 at 128–30. Moreover, Respondent concedes that this claim was "was not addressed by" the Appellate Division. *See* ECF No. 12-1 at 37. Because the Appellate Division never ruled on this issue, no AEDPA deference applies, and the Court will therefore consider *de novo* the merits of Petitioner's impartial jury claim related to Juror #4. *See Cone v. Bell*, 556 U.S. 449, 472 (2009) ("Because the [state] courts did not reach the merits of [petitioner]'s *Brady* claim, federal habeas review is not subject to the deferential standard that applies under AEDPA . . . . Instead, the claim is reviewed *de novo*.")

"Where trial courts learn of premature deliberations, they have 'broad flexibility' in investigating this form of juror misconduct." *Terrell*, 2019 WL 3859512, at *7 (quoting *United States v. Cox*, 324 F.3d 77, 86 (2d Cir. 2003)); *see also United States v. Thai*, 29 F.3d 785, 803 (2d Cir. 1994) ("We are particularly loath to second-guess the actions of the [trial] court when the defendant has failed to object at trial."). Given this required deference, the Court finds Petitioner has failed to establish she was prejudiced.

In support of her Petition, Petitioner cites *People v. Buford*, which discusses the New York state law standard governing juror misconduct and disqualification. *See* 506 N.E.2d 901, 905–906 (N.Y. 1987) (In determining if a juror should be disqualified, the trial court "must question each allegedly unqualified juror individually" and "evaluate the nature of what the juror has seen, heard, or has acquired knowledge of, and assess its importance and its bearing on the

case.").  However, federal habeas relief is not available for state law errors that do not rise to the

level of a violation of federal laws or the Constitution.  *See* 28 U.S.C. §2254(a).  Here, the trial

court's alleged violation of Petitioner's rights by not examining jurors about possible statements

or influence by Juror #4 did not rise to that level, and Petitioner's claim therefore does not

provide grounds for a habeas claim.

　　　In order to establish a violation of her Sixth Amendment right to a fair trial, Petitioner

must establish prejudice.  *See United States v. Abrams*, 137 F.3d 704, 709 (2d Cir. 1998)

("[P]rejudice is generally the touchstone of entitlement to a new trial when improper intra-jury

influences are at issue.").  In considering whether Petitioner's constitutional rights were violated,

"[t]he important thing is not that jurors keep silent with each other about the case but that each

juror keep an open mind until the case has been submitted to the jury."  *Brown v. Greiner*,

No. 02-cv-2043, 2003 WL 22964395, at *13 (E.D.N.Y. Oct. 2, 2003).  Here, the trial court

excused Juror #4 after she reported that she was worried her law education would prevent her

from following the judge's instructions.  *See* Tr. at 1644.  The trial court also asked Juror #4

about her discussions with other jurors:

> The Court:   [Juror #4], have you discussed any of your concerns that you just
> 　　　　　　 brought to our attention with any of the other jurors?
> The Juror:  No.  I—generally speaking, I've, you know, said some stuff I—
> The Court:  Said stuff like what?
> The Juror:  Like just what I know of the law.  And I don't want to influence anybody.

*Id*. at 1643:22–1644:7.  These statements do not suggest that Juror #4 made comments to other

jurors that would prevent them from keeping an open mind, following the trial court's

instructions on the applicable law, and coming to a fair and impartial verdict.

　　　In addition, the trial court took measures to ensure that jurors had not made up their

minds during the trial, in particular instructing the jurors repeatedly to keep an open mind

throughout the trial. At each recess, including on the day Juror #4 was discharged, the trial judge instructed the jurors to "[p]romptly report to me any incident involving an attempt by anyone to improperly influence you or any other member of the jury." *See* Tr. at 1782. Moreover, before deliberations began, the trial judge instructed the jurors that "[y]ou must not enter the jury room with such a closed mind." *See id.* at 3516–18 ("You should be open to reason and be willing either to adhere to your opinion and conclusions if persuaded you're correct or to change your opinion and conclusions if persuaded you are not correct."). Ultimately, there is no evidence that the jurors were unable to follow these instructions or that they were incapable of rendering an impartial verdict. Thus, Petitioner's claim regarding an impartial jury does not warrant habeas relief.

## V.    Petitioner's Claim That the Prosecution Failed to Provide Exculpatory Evidence is Unexhausted and Procedurally Barred

Petitioner asserts her due process rights were violated because the prosecution failed to produce possibly exculpatory evidence. *See* ECF No. 1 at 10. Specifically, Petitioner points to (i) testimony by Detective Vitucci that he threw away the cell phone he used to record surveillance, and (ii) the fact that the audio portion of surveillance footage was removed from the footage when it was presented at trial. *See id*. Petitioner further argues that the failure to provide the phone and the audio constituted a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *See* ECF No. 23 at 14–15. Respondent contends that such claims are unexhausted and meritless. *See* ECF No. 12-1 at 41.

Petitioner's claims related to surveillance video presented at trial were not fairly presented to the highest state court and have therefore not been properly exhausted. *Klein*, 667 F.2d at 282 ("[T]he petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts."). Petitioner is unable to

exhaust these claims because, as explained above, criminal defendants in New York are only entitled to one direct appeal and one request for leave to appeal. *See* 22 N.Y.C.R.R. § 500.10(a). If a claim is unexhausted and procedurally barred in state court, "federal habeas courts also must deem the claims procedurally defaulted." *See Aparicio*, 269 F.3d at 90 (2d Cir. 2001); *see also Wisdom v. Griffin*, No. 15-cv-6578, 2019 WL 13330781, at *4 (E.D.N.Y. July 31, 2019) ("Since [petitioner] has already used his one opportunity for leave to appeal to the New York Court of Appeals, this unexhausted claim would be procedurally barred in state court, and, consequently, though not substantively litigated to exhaustion in state court, is . . . procedurally barred in federal court."). Additionally, since Petitioner's counsel was constitutionally effective for the reasons explained in Section II, and since Petitioner has identified no other purported cause for the procedural default, she cannot overcome the procedural bars to her claims regarding video surveillance, and the claims are therefore dismissed.

## VI.    Petitioner's Legal Insufficiency Claim is Meritless

Petitioner argues that the evidence at trial was legally insufficient to sustain her conviction for conspiring in the second degree to possess a controlled substance because no witness testified that she entered into an agreement to possess four or more ounces of Oxycodone. *See* ECF No. 23 at 16. This claim was presented in Petitioner's direct appeal, and the Appellate Division found that the claim "is partially unpreserved for appellate review." *See Gordon-Patterson*, 94 N.Y.S.3d at 615. Moreover, the Appellate Division found that, to the extent the claim was preserved for appellate review, the evidence presented at trial was legally sufficient and "the verdict of guilt . . . was not against the weight of the evidence." *See id.*

As the Appellate Division reviewed the sufficiency claim on the merits, its decision must be accorded "substantial deference." *See Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015). The Appellate Division's rejection of the sufficiency argument was certainly reasonable, since,

between June 2011 and June 2012, Petitioner wrote prescriptions for at least 1,250 30-mg

Oxycodone tablets for her co-conspirators, and witnesses testified Petitioner knew the tablets she

was prescribing were being diverted.  *See* Tr. at 2025–26, 2793, 3002.  According to the expert

who testified at trial, approximately 960 Oxycodone tablets would be four or more ounces.  *See*

Tr. at 2660.  The totality of the evidence was therefore sufficient for the jury to conclude beyond

a reasonable doubt that Petitioner agreed with her co-conspirators to possess four or more ounces

of Oxycodone.  *See* N.Y. Penal Law § 220.18.  Viewing the evidence in the light most favorable

to the prosecution, as this Court is required to do, *see Fama v. Comm'r of Corr. Servs.*, 235 F.3d

804, 811 (2d Cir. 2000), there was sufficient evidence for the jury to find beyond a reasonable

doubt that Petitioner was guilty of conspiracy in the second degree.  Petitioner is therefore not

entitled to relief on this claim.

### VII.    Petitioner's Claim Regarding Multiplicitous Counts in the Indictment is Procedurally Barred

Petitioner asserts that her conviction for conspiracy in the fourth degree related to the

criminal sale of a prescription was obtained in violation of the double jeopardy clause of the

Fifth Amendment because the "indictment was multiplicitous."  *See* ECF No. 23 at 17–18.  This

claim was presented in state court on direct appeal, and the Appellate Division found that "[t]he

defendant's contention that the indictment was facially defective because it contained

multiplicitous counts is unpreserved for appellate review."  *Gordon-Patterson*, 94 N.Y.S.3d at

615 (citing *People v. Cassidy*, 519 N.Y.S.2d 275 (N.Y. App. Div. 1987)).  Moreover, the

Appellate Division found that "[i]n any event, the counts of conspiracy in the second degree and

conspiracy in the fourth degree were not multiplicitous because those two counts were clearly

distinct, and a conviction of one count would not be inconsistent with acquittal of the other."  *Id.*

Under New York law, in order to preserve a claim regarding multiplicitous counts, a defendant must make a "pretrial motion to dismiss." *See Cassidy*, 519 N.Y.S.2d at 277; *see also* N.Y. Crim. Proc. § 255.20. Since Petitioner did not include this claim in her pretrial omnibus motion, the Appellate Division properly found that the claim was unpreserved. The state's reliance "on a procedural default as an independent and adequate state ground" forecloses federal habeas relief for this claim. *See Glenn*, 98 F.3d at 724. Here, the state's procedural ground for dismissal is adequate to support the judgment because "New York's preservation doctrine is firmly established and regularly followed." *See Izaguirre v. Lee*, No. 16-cv-7179, 2017 WL 4516818, at *7 (E.D.N.Y. Oct. 10, 2017). Accordingly, federal habeas review of Petitioner's claim that her Fifth Amendment rights were violated because the indictment was multiplicitous is foreclosed. Additionally, since Petitioner's counsel was constitutionally effective for the reasons explained in Section II, and since Petitioner has identified no other purported cause for the procedural default, she cannot overcome the procedural bar against this claim.

### VIII.  Petitioner's Additional Claims are Unexhausted and Procedurally Barred

Petitioner claims a number of additional factors violated her right to a fair trial. First, she argues that the trial court did not grant the deliberating jury's request to review witness testimony or police records. *See* ECF No. 23 at 15. She also states that there were no pretrial hearings to address the unavailability of witnesses. *See id.* at 18. Finally, Petitioner points to "[t]he recent spotlight on the level of corruption within the Suffolk County Criminal Justice system under [former District Attorney] Thomas Spota." *Id.* at 26–27. Because none of these claims were presented to the state court on direct appeal, she has not "exhausted the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(1)(A). These claims are also procedurally barred, meaning Petitioner may not now return to state court to seek collateral

32

review.  *See* N.Y. Crim. Proc. Law § 440.10(2)(c).  "Federal courts in this Circuit have repeatedly held that the gatekeeping provisions of New York laws governing a petitioner's failure to raise a claim on direct appeal represent the application of a firmly established and regularly followed New York rule."  *Viruet v. Callado*, No. 18-cv-3315, 2023 WL 1967517, at *3 (E.D.N.Y. Feb. 13, 2023).  Accordingly, federal habeas review of these claims is foreclosed.

In any event, this Court finds that these claims are meritless.  As to Petitioner's claims regarding the jury's requests to review evidence during deliberation, the trial court's handling of jury requests is reviewed for abuse of discretion.  *See Cottrel v. New York*, 259 F.Supp.2d 300, 305 (S.D.N.Y. 2003).  Where the trial court "respond[s] meaningfully to the jury's request for further instruction or information," no abuse of discretion has occurred.  *See Washington v. Griffin*, No. 17-cv-3849, 2019 WL 7598584, at *12 (S.D.N.Y. Dec. 23, 2019).  Here, the trial court responded meaningfully to the jury's request for a read-back of certain testimony by fully acquiescing and asking the court reporter to read back the "requested portions."  *See* Tr. at 3551. In response to the jury's request for records from the Bureau of Narcotics Enforcement ("BNE") for Mark Fasciana, a former patient of Petitioner who testified at the trial, the trial judge consulted with counsel in chambers, determined that a BNE record did not exist for Mr. Fasciana, and informed the jury that there is no such record in evidence.  *See* Tr. at 3528–31. Thus, the trial judge responded fully to the jury's requests by providing all available information. Accordingly, the Court finds that "no error of a constitutional dimension exists" to justify habeas relief.  *See Griffin*, 2019 WL 7598584, at *13.

As to the claim regarding pretrial hearings, Petitioner asserts her Sixth Amendment right to confront witnesses was violated because her co-conspirators did not testify at her trial, and she was therefore not able to cross-examine them.  *See* ECF No. 23 at 17–18.  To succeed on this

claim, Petitioner "must persuade the federal court not only that the trial court abused its broad discretion by precluding cross-examination . . . but also that the [state appellate court] could not reasonably have determined that the [evidence] would have been excludable had the trial court properly applied standard rules of evidence." *Koiki v. New York*, No. 18-cv-6216, 2023 WL 4490284, at *22 (E.D.N.Y. July 12, 2023). Petitioner cannot make the required showing because the trial judge properly admitted statements made by her co-conspirators. As described above, *see supra* § II, statements made by co-conspirators in the course and furtherance of the conspiracy are admissible over hearsay objections. *See Crawford*, 541 U.S. at 68; *see also People v. Bac Tran*, 80 N.Y.2d 170, 179 (N.Y. 1992). Here, hearsay statements made by Petitioner's co-conspirators were properly admitted at trial as statements made in furtherance of the conspiracy. Therefore, this claim is not entitled to federal habeas relief.

Finally, as to Petitioner's claims regarding former District Attorney Spota, Petitioner has not demonstrated that her trial was directly affected by the alleged corruption. "[C]onclusory allegations of systematic corruption . . . do not warrant excusing § 2254's exhaustion requirement." *Gashi v. Montagari*, 22-cv-01323, 2023 WL 3624773, at *2 (N.D.N.Y. May 23, 2023). Petitioner's vague, conclusory allegations regarding the Suffolk County District Attorney's office are not evidence that alleged corruption impacted the outcome of her trial. Moreover, even if Petitioner had substantiated her assertions, "that would do little to undermine the undisputed evidence that" she illegally diverted substantial quantities of Oxycodone. *See Triplett v. Reardon*, 20-cv-1064, 2023 WL 3045737, at *16 (S.D.N.Y. Mar. 31, 2023). Accordingly, this claim is not entitled to habeas relief.

34

## **CONCLUSION**

For the reasons set forth herein, the Court DENIES with prejudice the Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* ECF No. 1. The Court declines to issue a certificate of appealability because Petitioner has failed to make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). Any additional request for a certificate of appealability must be addressed to the Second Circuit. *See* Fed. R. App. P. 22(b). The Court further certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and, therefore, denies Petitioner *in forma pauperis* status for the purpose of an appeal. *See Samura v. Figueroa*, No. 21-cv-01248, 2023 WL 2305961, *6 (E.D.N.Y. Mar. 1, 2023); *see also Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Court respectfully directs the Clerk of Court to enter judgment denying the Petition, to close this case, and to mail Petitioner a copy of this order and the judgment.

SO ORDERED.

 /s/ Hector Gonzalez
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
 July 28, 2025